UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELA COPELAND,

     Plaintiff,

v.

                                       Case No. 1:19-cv-1033

THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY,                      HON. JANE M. BECKERING

     Defendant.

_____/

## OPINION AND ORDER

Plaintiff Angela Copeland (Copeland) initiated this action against Defendant Lincoln National Life Insurance Company (Lincoln) alleging the wrongful denial of disability benefits under her employer-sponsored plan.  Lincoln filed the administrative record (ECF No. 22). Copeland filed a brief challenging Lincoln's administrative decision (ECF No. 23).  Lincoln filed a brief in opposition (ECF No. 26), and Copeland filed a reply (ECF No. 27).  For the reasons stated below, the administrative decision is affirmed.

## I.      BACKGROUND

Copeland was previously employed as a Computer Programmer/Analyst at Edward Rose & Sons. As an eligible employee, she enrolled in her employer's long-term disability (LTD) plan, which was administrated by Lincoln. Under the policy, an employee is considered totally disabled if she cannot perform each of the main duties of her own occupation for a period of 24 months after the elimination period (180 days after disability begins) (ECF No. 22-4 at PageID.1066–1070). The policy also provides for a partial disability benefit if the employee is unable to perform one or more of the main duties of her own occupation and is engaged in "Partial Disability

Employment," which means (1) the employee's hours or production is reduced; (2) one or more main duties of the job were reassigned; or (3) the employee is working in a lower-paid occupation (*id.* at PageID.1070).

The main duties of an occupation include the job tasks described in the applicable sections of the U.S. Department of Labor Dictionary of Occupational Titles (*id.* at PageID.1069). Copeland's occupation was defined as Programmer/Analyst position (*id.* at PageID.1150). The main duties include but are not limited to the following:

1. Plans, develops, tests, and documents computer programs, applying knowledge of programming techniques and computer systems.

2. Evaluates user request for new or modified program, such as for financial or human resource management system, clinical research trial results, statistical study of traffic patterns, or analyzing and developing specifications for bridge design, to determine feasibility, cost and time required, compatibility with current system, and computer capabilities.

3. Consults with user to identify current operating procedures and clarify program objectives.

4. Reads manuals, periodicals, and technical reports to learn ways to develop programs that meet user requirements.

5. Formulates plan outlining steps required to develop program, using structured analysis and design.

6. Submits plans to user for approval.

7. Prepares flowcharts and diagrams to illustrate sequence of steps program must follow and to describe logical operations involved.

(ECF No. 22-1 at PageID.794).

On April 4, 2016, Copeland stopped working full-time and applied for short-term disability (STD) benefits due to her "chronic fatigue syndrome/seizure disorder" (ECF No. 22-4 at PageID.940). While her claim was pending, Copeland returned to work part-time from October 4, 2016 to January 18, 2017. Lincoln eventually denied the STD claim (ECF No. 22-1 at PageID.852–857) and upheld its decision on appeal (*id.* at PageID.475–484; PageID.632–637).

Copeland then filed suit in this Court. *See Copeland v. Lincoln Nat'l Life Ins. Grp.,* No. 1:17-cv-816 (W.D. Mich.).  In 2018, the parties settled the STD lawsuit, and Copeland began pursuing LTD benefits.

On January 10, 2018, Copeland applied for LTD benefits (ECF No. 22-9 at PageID.2048–2058).  In support of her claim, Copeland provided a summary of her medical conditions, which included: (1) seizures as early as an 18-month-old infant; (2) seizures, migraines, and hearing loss following an auto accident in 1982; (3) back, hip, and shoulder pain beginning in the 1990s; (4) diagnoses of Fibromyalgia, Chronic Fatigue, and Degenerative Back Disease in 2008; and (5) a diagnosis of Dysthymia (*id.* at PageID.2055).  Copeland stated that all her past "symptoms continue" (*id.*).  Her claim file contained medical documents from her treating doctors—Brien Smith (neurology), David Burdette (neurology), Mohamed Haykal (neurology), Michael Lawrence (neuropsychology), Timothy Swartz (rheumatology), and Shamika Hall (psychology).

To evaluate Copeland's claim, Lincoln sought its own medical opinions. Lincoln first obtained a board-certified neurologist, Dr. David Hoenig, to independently review Copeland's medical records (ECF No. 22-5 at PageID.1673–1679).  After reviewing the medical records, Dr. Hoenig opined that Copeland did not have significant cognitive deficits from a neurological perspective (*id.* at PageID.1677).  Dr. Hoenig noted that Copeland had a neuropsychological evaluation in the past that was negative for significant cognitive pathology and there was no documentation of an updated evaluation (*id.* at PageID.1678).

In addition to an independent review of the medical records, Lincoln selected a board-certified neuropsychologist, Dr. Christopher Contardo, to perform an independent medical examination of Copeland (*id.* at PageID.1646–1661).  The examination occurred on June 14, 2018 (*id.*).  Dr. Contardo found Copeland was "alert and fully oriented as to person, place, and time" (*id.* at PageID.1647).  Although she did not have word-finding difficulties or verbal paraphasias,

Dr. Contardo noted that Copeland "had a few occasions of mildly decreased rate" (*id.*). However, these instances "were not significant and did not impact her ability to communicate" (*id.*).  Dr. Contardo further found that Copeland "was able to stay on task without undue distraction" (*id.* at PageID.1647). After performing various cognitive tests, Dr. Contardo concluded that Copeland did "not have any significant cognitive deficits with regards to academic achievement, verbal learning and memory, non-verbal learning and memory, language functioning, visuospatial processing, processing speed, or executive functioning" (*id.* at PageID.1660).

On June 25, 2018, Lincoln denied Copeland's claim for LTD benefits (ECF No. 22-5 at PageID.1636–1644).   In the denial, Lincoln summarized Copeland's medical records and concluded:

> In summary, the medical documentation contained in your claim file does not support Total Disability as defined by the policy. Dr. Haykal gave you restrictions and limitations that you should not drive, operate heavy machinery, work with sharp tools, near open flames, at unprotected heights or near large bodies of water. He noted it was unlikely for seizures to stop completely. These restrictions do not preclude you from your own occupation. Dr. Swartz noted your cognitive functioning was declining and your memory was poor. You completed an Independent Medical Exam that showed no cognitive impairment. Dr. Swartz noted your seizure medications cause marked fatigue and did not provide any diagnostic testing or objective medical evidence to support his restrictions that you could not sit or stand for more than 20 minutes or walk for more than 10–15 minutes. You could not work with shoulder abducted or do repetitive activities with your feet or hands. You were not to lift over 5 lbs. occasionally. As the provided restrictions and limitations are not consistent with the true objective medical evidence in the file, benefits have been denied.

(*id.* at PageID.1643).

On December 18, 2018, Copeland appealed the denial (ECF No. 22-5 at PageID.1537–1633).   She argued that the decision failed to consider all the main duties of a Computer Programmer/Analyst occupation. She also submitted new medical information from Drs. Swartz, Hall, Ajayi-Nabors, and Haykal.  Specifically, Dr. Swartz wrote a letter disagreeing with the denial of benefits (*id.* at PageID.1574).  He stated that the denial "failed to appreciate the multitude of

factors identified: her ongoing seizure disorder, depression, chronic fatigue, back disease and medication effects have left her unemployable" (*id.*).  Dr. Hall filled out a questionnaire and ultimately disagreed with Dr. Contardo's assessment (*id.* at PageID.1576–1577).  Dr. Ajayi-Nabors conducted a mental status examination and opined that "there appear to be barriers that would prevent her from obtaining and maintaining employment at this time" (*id.* at PageID.1618).  And Copeland submitted medical records from Haykal for visits on January 18, 2018 and June 8, 2018 (*id*. at PageID.1579–1614).

To evaluate this appeal, Lincoln had a registered nurse, Patricia Wagoner, review the record (ECF No. 22-4 at PageID.1286–1290).  Based on her review, Nurse Wagoner opined:

> There is no evidence in the file of physical functional limitations, repeatedly there is normal motor strength 5/5, no abnormal sensory exams, normal gait and no abnormality in orientation, and no distress noted in office notes. Neurology has provided seizure precautions r/t epilepsy which is reasonable and would not preclude her ability to work, they state she is compliant with medications with no significant side effects noted in exam findings. Clmt self-reports cognitive concerns in which multiple providers i.e. neurocognitive testing, peer review, IME and neurology notes do not support.

(*id.* at PageID.1286).

In response to Nurse Wagoner's report, Copeland submitted additional letters from Drs. Hykal, Swartz, and Hall, as well as her chiropractor, Stephen Hoard (*id.* at PageID.1259–1265). Dr. Haykal wrote: "[b]ased on my review of the results of [Copeland's] neurophysiological evaluation completed at Spectrum Health in November 2015, it is my impression that her overall symptoms had a significant impact on her ability to adequately perform her job as a computer programmer in 2016" (*id.* at PageID.1261).  Dr. Swartz opined that Copeland's "rheumatologic conditions" made her unable to do her former job since 2016 (*id.* at PageID.1262).  Dr. Hall wrote that she had "witnessed [Copeland] getting sad for no reason, having poor short-term memory issues, forgetfulness, and express a loss of enjoyment in activities she once enjoyed" (*id.* at

PageID.1263). She further stated that she "fully supported a reduction in hours that Mrs. Copeland could cognitively perform in front of a computer" (*id.*). Finally, Dr. Hoard wrote that the "continued deterioration of [Copeland's] condition has made sitting for more than 15 minutes an impossibility" (*id.* at PageID.1265).

On March 27, 2019, Lincoln denied Copeland's first appeal (ECF No. 22-4 at PageID.1239–1247). Lincoln acknowledged the opinions of Copeland's treating physicians, but concluded that the medical records did not support a finding of Total Disability or Partial Disability during the relevant time period (*id.* at PageID.1246).

On August 28, 2019, Copeland filed a second appeal (ECF No. 22-4 at PageID.1212–1232). This appeal relied primarily on a June 25, 2019 opinion by the Social Security Administration awarding Copeland social security disability benefits (*id.*). In that opinion, the Administrative Law Judge (ALJ) found that Copeland was unable to perform any past relevant work since January 18, 2017 (*id.* at PageID.1223). Nonetheless, the ALJ determined Copeland was not disabled prior to April 30, 2018 (*id.* at PageID.1225). In addition, the ALJ discredited the medical opinions of Drs. Swartz and Hoard because the opinions were not consistent with the objective evidence and overstated Copeland's limitations (*id.* at PageID.1223). However, the ALJ found the opinions of Drs. Haykai and Hall to be "supported by the objective evidence in their own records and well explained" (*id.*).

To review this appeal, Lincoln again asked a registered nurse, Fil Castillo, to independently review Copeland's medical records (*id.* at PageID.1161–1164). After reviewing the records, Nurse Castillo reached the same conclusion as Drs. Contardo and Hoenig, to wit: Copeland had no significant neurological or cognitive limitations (*id.* at PageID.1164). Nurse Castillo concluded:

> [T]he medical findings do not support psychological, behavioral, cognitive, neurological, visual, rheumatological, musculoskeletal or physical functional impairments that would preclude tasks including but not limited to engaging in

stress or interpersonal relations, comprehension, memorization, concentration, attention, executive function tasking and learning new information as well as frequent sitting (with reasonable breaks and positional changes throughout the day), occasional standing/walking (with reasonable breaks and positional changes throughout the day), lifting 0–10lbs occasionally, and performing frequent tasks such as typing and keyboarding with a computer from 4/4/16 and beyond.

(*Id.*).

On October 18, 2019, Lincoln denied Copeland's second appeal (ECF No. 22-4 at PageID.1148–1153). Lincoln again determined that Copeland's file lacked any objective evidence of impairment that would translate into functional limitations (*id.* at PageID.1152). Lincoln also found the social security decision unhelpful because the ALJ specifically held that Copeland was not disabled until April 30, 2018, which was after the relevant time frame under the policy (*id.*).

On December 9, 2019, Copeland initiated this suit challenging Lincoln's decision (Compl., ECF No. 1, as corrected by ECF No. 4). She asks the Court to (1) overturn the administrative decision; (2) order Lincoln to pay past partial disability benefits from October 4, 2016 to January 18, 2017; (3) order Lincoln to pay total disability benefits from January 18, 2017 to October 4, 2018; and (4) remand this case for determination of whether Copeland is disabled from any gainful occupation (*id.*). The administrative record was filed in January 2021 (ECF No. 22), and the matter was fully briefed in March 2021. On October 1, 2024, pursuant to Administrative Order No. 24-CA-079, this case was assigned to the undersigned (ECF No. 28).

## II.    LEGAL STANDARD

ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). The Court reviews the denial of benefits in this case de novo (ECF No. 21).  Under the de novo standard, no deference or presumption of correctness is afforded to the administrator's decision.  *Perry v. Simplicity Eng'g,* 900 F.2d 963, 966 (6th Cir. 1990). The plaintiff bears the burden of proving by a preponderance of evidence that she is disabled within the meaning of the plan.  *Javery v. Lucent Techs., Inc. Long Term Disability Plan,* 741 F.3d 686, 700–01 (6th Cir. 2014). The Court must give a "fresh look" at the record, giving "proper weight to each expert's opinion in accordance with supporting medical tests and underlying objective findings." *Id.* at 700.

## III.    ANALYSIS

Copeland argues that her epilepsy, fibromyalgia, dysthymia, and degenerative back disease, along with the side effects of her medication, made her disabled within the meaning of the policy.  She contends that the medical record and the opinions of her treating physicians show that her ability to perform her occupation declined to the point of complete disability.  She further argues that Lincoln erred by (1) ignoring her subjective complaints; (2) disregarding the side effects of her medication; (3) failing to adequately consider the social security opinion; (4) overlooking the intellectual aspect of her occupation; and (5) failing to give her a full and fair review.

Lincoln responds that Copeland has the burden to prove her continuous disability throughout the elimination period. It further contends that it provided a full and fair review of the record and that Copeland failed to make the requisite showing through the contemporaneous medical records.

After carefully reviewing the entire record, the Court finds that Copeland failed to show, by a preponderance of the evidence, that she was disabled within the meaning of the policy.

The medical records establish that Copeland was diagnosed with epilepsy, fibromyalgia, dysthymia, and degenerative back disease. She received treatment for those conditions from several doctors. The medical records further show that Copeland experienced some cognitive decline.  And Copeland consistently made subjective complaints to her treating physicians about her cognitive decline and back pain.  However, the records do not show such a drastic decline to prevent her from performing any of the main duties of her occupation.  Dr. Lawrence performed neuropsychological evaluations in 2014 and 2015 (ECF No. 22-4 at PageID.871–876; PageID.877–882). Even though Copeland self-reported cognitive decline, Dr. Lawrence concluded: "I am happy to report that when compared to previous testing, broadly similar performances [are] noted. This, of course, is extremely positive news" (*id.* at PageID.881).  On February 8, 2016, Dr. Burdette noted there was "perhaps mild evidence" of decline when compared to previous testing (ECF No. 22-6 at PageID.1933).  Seven months later, Dr. Burdette saw Copeland again for a follow-up visit and the mental status and motor exam revealed no significant concerns (*id.* at PageID.1939).

Copeland did not undergo another neuropsychological evaluation until Dr. Contardo performed the independent examination on June 14, 2018.  He ultimately concluded that Copeland did "not have any significant cognitive deficits with regards to academic achievement, verbal learning and memory, non-verbal learning and memory, language functioning, visuospatial

processing, processing speed, or executive functioning" (ECF No. 22-5 at PageID.1660).[1]  There

is no other objective medical evidence to dispute these findings.

Copeland suggests that Lincoln essentially ignored the opinions of her treating doctors. It

is well-established that "[p]lan administrators are not obliged to accord special deference to the

opinions of treating physicians." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825

(2003).  The record shows that Lincoln considered the opinions but did not find them persuasive

for various reasons.  For example, Dr. Swartz gave multiple opinions that were conclusory, outside

his specialty, and unsupported by his own contemporaneous office notes.[2]  Similarly, during the

first appeal, Nurse Wagoner reviewed new opinions by Drs. Haykal, Swartz, Hall, and Hoard but

discredited them primarily because the submissions did not provide any substantially new medical

findings to change the prior determination (ECF No. 22-4 at PageID.1037).  When denying the

appeal, Lincoln stated "there is no detailed functional measures with regard to [Copeland's] overall

work abilities and the medical records do not support a Total Disability or Partial Disability during

the time period in question" (*id.* at PageID.1245).

This case is easily distinguishable from the case cited by Copeland—*Haning v. Hartford*

*Life & Accident Ins. Co.*, 140 F. Supp. 3d 654 (S.D. Ohio 2015).  In that case, which is not binding

on this Court, the district court criticized the administrator for discrediting the claimant's

subjective indications of pain and treating physicians' opinions based on a consultant's review of

the file and the lack of objective medical evidence.  *Id.* at 672.  The district court determined that

the administrator's decision to terminate benefits was arbitrary and capricious in part because it

---

[1] Although Dr. Contardo found no significant cognitive deficits, he also noted that he "could not rule out the possibility [Copeland] has declined from her previous levels of functioning" (ECF No. 22-5 at PageID.1660).

[2] Dr. Swartz's notes consistently show no acute distress, normal extremities, normal gait, and 5/5 muscle strength. *See, e.g.*, ECF No. 22-6 at PageID.1811, PageID.1823, PageID.1828, PageID.1833, & PageID.1839.

never sought an in-person examination. *Id.* Here, unlike the administrator in *Haning*, Lincoln obtained an independent neuropsychologist to perform an in-person examination. Dr. Contardo did not find any significant cognitive deficits. Moreover, as cited above, the objective medical evidence demonstrated that Copeland's decline was not drastic during the relevant time period.

Copeland also cites to the fact that the ALJ determined that "[s]ince January 18, 2017, [Copeland] has been unable to perform any past relevant work" (ECF No. 22-4 at PageID.1223). But the ALJ also determined that Copeland was not disabled prior to April 30, 2018. Nevertheless, the plan administrator is not bound by the Social Security Administration's disability findings. *Whitaker v. Hartford*, 404 F.3d 947, 949 (6th Cir. 2005). This is because "a claim for benefits under an ERISA plan often turns on the interpretation of plan terms that differ from SSA criteria." *Id.* Yet the Social Security Administration's decision "is far from meaningless." *Calvert v. Firstar Fin, Inc.,* 409 F.3d 286, 293 (6th Cir. 2005). Although not meaningless, the ALJ applied different rules to determine Copeland was unable to perform past relevant work since January 18, 2017, but was still not disabled until April 30, 2018. Notably, the ALJ does not appear to have considered the same record as Lincoln because the neuropsychological evaluations in 2014, 2015, and 2018 are not listed by the ALJ as "Medical Records" he reviewed (*see* ECF No. 22-4 PageID.1228–1230).

Copeland also argues that Lincoln did not take into account the side effects of her medications. These medications include Brivaracetam, Onfi, Vimpat, Naproxen, Nuvigil, Elavil, Vitamin D, and CoQ10, and Ibuprofen (ECF No. 22-5 at PageID.1371–1378). But Nurse Wagoner noted that there were no significant side effects shown in the medical records (ECF No. 22-4 at PageID.1020). The medical records support this finding. *See, e.g.*, ECF No. 22-6 at PageID.1806 ("Medications well tolerated"); PageID.1878 ("No medication intolerance"). Although Copeland experienced fatigue, she appeared to be tolerating the medications well during the relevant time

period.   Copeland's submission of printouts showing possible side-effects is insignificant. *See*

*Schwalm v. Guardian Life Ins. Co.,* 626 F.3d 299, 313 (6th Cir. 2010) ("The printouts, while

certainly some evidence that opioid pain medications can lead to cognitive side effects . . . do not

demonstrate that [the appellant] was disabled by those side effects in this case.") (citation omitted).

Copeland next complains that Lincoln did not consider the intellectual aspect of being a

Computer Programmer/Analyst.   The Court disagrees.   The appeal denials clearly lay out the

intellectual aspects of the occupation.  *See* ECF No. 22-4 at PageID.1241, PageID.1150.

In the Court's view, Lincoln equally weighed and fairly considered all the evidence in the

record.  It obtained independent physicians to review the medical records and performed an in-

person examination. Copeland's complaints that Dr. Hoening did not review all the medical

records is without merit.  He reviewed the records that were legible.  In any event, Dr. Hoening's

report is only one piece of the record.  Ultimately, Copeland had the burden to prove her disability

during the relevant period.  She failed to do so on this record.  While the Court is sympathetic to

Copeland's many health challenges, the Court agrees with and affirms the decision of the plan

administrator with respect to whether Copeland qualified for benefits under the ERISA plan during

the relevant time period.

## IV.    CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the administrative decision is AFFIRMED.

A separate Judgment will enter.


Dated:  October 11, 2024                                   /s/ Jane M. Beckering
                                                                    JANE M. BECKERING
                                                                    United States District Judge